Opinion of the court by
Judge Owsley.
[Absent Chief Justice Bibb.]
This was an ejectment brought in the circuit court by Cockrell, to recover the possession of one hundred and fifty acres of land, which was patented to him, in virtue of a survey made under a Kentucky land office treasury warrant.
M’Quinn, who was the tenant in possession of the land, appeared in court, caused himself to be made defendant, and pleaded the general issue. A jury was called to try the issue, and after being instructed by the court upon points of law made by the parties, found a verdict for M’Quinn;. and judgment was thereupon rendered against Cockrell.
The main question that appears to have been controverted in the court below, and the only one worthy of notice by us, relates to the boundary of the land described in a patent which issued from the Commonwealth of Virginia, to James Reynolds, for one hundred and twenty six thousand one hundred and forty acres of land, upon a survey bearing date the 18th of July, 1784.
That patent was read in evidence to the jury, by M’Quinn, and describes the land to lie on the left hand fork of the north fork of Kentucky, and bounded as follows, to wit: “Beginning fifteen miles from the mouth of said fork, when reduced to a straight line at a seall beech, marked with the letter R. E. B. standing near the edge of said fork, *62 being the uppermost corner of a tract of land entered by P. D. Roberts, Townsend, Brothers and company &c. and represented on the platt by letter A, and running along with their land, north nine degrees west, six thousand four hundred poles to three sugar trees and cherry tree; thence north eighty-one east, three thousand one hundred and forty-eight poles, to a poplar and two white oaks; thence south nine east, six thousand four hundred poles, to the edge of the aforesaid left hand or north fork of Kentucky; thence down the river these several courses, viz: South 51 west, 24 poles, south 75 west, 360 poles, north 85 1.2 west, 480 poles, north 67 west, 140 poles, south 28 west, 220 poles, west, 300 poles, north 46 west, 190 poles, south 79 west. 240 poles, south 64 west, 640 poles, to the beginning; but when reduced to a straight line, is three thousand one hundred and forty poles.”
Instructions of the court as to boundary.
Where there is no controversy as to the objects boundaries of the patent is exclusively matter of law to be pronounced by the court,
*62 There was no controversy between the parties, either as to the beginning or the fourth corner described in the patent. The beginning was proved to be on the north side of the north fork of Kentucky, and the jury were instructed by the court, that the fourth corner was at that point on the same side of the fork, where pursuing the course of the third line, from the third corner, it would strike the fork, and that instruction was acquiesced in by both parties.
The court then, on the motion of M’Quinn, instructed the jury “that the calls in the patent, “thence from the fourth course down the river these several courses,” should be construed by the jury as a call to run down the river, binding thereon with its meanders, to the beginning, and that the fourth boundary line of Reynolds’ survey was the said north fork of Kentucky.”
The question, therefore, which it becomes necessary for us to consider, involves the correctness of these instructions.
It should be remarked, that no attempt was made on the trial, to prove any marked lines or any course between the fourth corner on the north fork, *63 and the beginning corner of Reynolds, though it was proved that instead of following the course of the fork, the courses and distances called for between those corners would cross the fork. Whatever effect might, therefore, have been produced upon the question of boundary, by testimony going to prove the existence of marked lines down the north fork, it is perfectly clear, that as no evidence of the sort was introduced, the court, by its instructions, can not have encroached upon the right of the jury. In cases of boundary which depend upon the swearing of witnesses, it would, no doubt, be incompetent for the court, by any sort of instructions that might be given, to withdraw from the jury a decision upon the weight of the testimony and the facts which the testimony conduces to establish. The actual position and identity of the boundary in such a case would be exclusively a question of fact for the consideration and determination of the jury, and not the court. But the case now under consideration is not one of that sort. The question for our consideration involves no inquiry into the testimony of witnesses, or any decision upon the facts which such evidence conduces to prove; but on the contrary, it barely, in the absence of all parol evidence as to marked lines, presents for the determination of the court the construction of the calls for boundary, mentioned in the patent of Reynolds, and surely none will pretend that the legal construction of a patent, is not a matter proper for the decision of a court, whose province it is to decide all questions of law.
The calls were to run from a corner on a river, “thence down the river, these several courses,” (giving the courses and distances but no corners,) “to the beginning, but when reduced to a straight line, is 3,140 poles,” and no marked lines or corner-appeared : held the river was the boundary.
*63 Considering the question, then, one that was proper for the determination of the court, it remains to be inquired, whether or not, in giving a construction to the calls of the patent, the instructions of the court are correct.
If, in the first branch of the instructions, the court was correct in supposing that the call in the patent to run down the river these several courses, &c. should be construed as a call to run with the river, it was unquestionably correct to instruct the jury that the north fork between the fourth corner of the patent and the beginning, formed part of the *64 boundary of Reynold’s survey; and that in the first branch of the instruction, the court gave a correct construction to the calls in the patent, we apprehend there is no reasonable ground to doubt. Though from the fourth corner to the beginning, the courses and distances are mentioned in the patent, there, is a total failure to call for any corner at the termination of either course, as it would have been the duty of the surveyor to do; if, instead of intending to make the north fork the actual boundary, it had been designed to limit the survey by the courses and distances; and not only so, but after giving the courses and distances to the beginning, the surveyor, as is usual where courses and distances are made the actual boundary, has not remained silent as to further description, but he concludes by describing the distance on a straight line from the fourth corner to the beginning, to be three thousand one hundred and forty poles. These circumstances, combined with the facts, that the fourth corner and the beginning are both on the same fork, together with the call to run “down the river these several courses.” &c. convince us that it was intended to make the north tork between those corners, the boundary of the survey, and that the court was correct in so instructing the jury.
Caperton, Hanson and Breck, for plaintiff; Turner for defendant.
The judgment must, therefore, be affirmed with cost.