CASE 111—INDICTMENT AGAINST LOUISVILLE & EVANSVILLE PACKET COMPANY FOR VIOLATING LOCAL OPTION LAW.—APRIL 15.

# Commonwealth v. Louisville & Evansville Packet Co.

APPEAL FROM BRECKINRIDGE CIRCUIT COURT.

FROM A JUDGMENT SUSTAINING A DEMURRER TO THE INDICTMENT THE COMMONWEALTH APPEALS. REVERSED.

INTOXICATING LIQUORS—LOCAL OPTION LAW—VIOLATION—JURISDIC-TION—STATUTES.

Held: 1. Kentucky Statutes, 1903, section 198, declares that Kentucky's jurisdiction covers the entire soil and waters within its boundaries, and that each county whose boundary `is described in part by the Ohio river shall be considered as bounded in that particular by the State line. Sections 1078-1090 require the counties to be laid off into not less than three, nor more than eight, magisterial districts. The Cloverport magisterial district, in Breckinridge county, in which a local opton law is in force, is bounded as "beginning at a point on the Ohio river," and, in closing, "thence to the Ohio river; thence up the river to the place of beginning." Defendant was charged with having rented on its steamboat a barroom to another, in which he sold liquors, with defendant's knowledge and consent, to a person at the wharf in Cloverport while the boat was anchored to the wharf on the Ohio river, a navigable stream. HELD, that the act charged took place within the Cloverport magisterial district.

J. R. LAYMAN AND N. B. HAYS, ATTORNEY GENERAL, FOR COMMONWEALTH.

(No brief in the record.)

MURRAY & MURRAY, FOR APPELLEE.

On hearing the demurrer to the indictment it was agreed that the boundary of the local option district set out in the

order of the county court creating said district, should be con-
sidered by the court as if set out in the indictment.

Said order shows that the Ohio river is boundary line of the
district, the line calling to run to the Ohio river, "thence with
the river," &c.

The legal question is, does jurisdiction rest in the Kentucky
courts to punish a violation of the local option law of a dis-
trict lying adjoining the river, where the alleged offense was
committed on the river?

We contend that such jurisdiction does not lie in the Kentucky
courts for three reasons:

1. The jurisdiction of the counties over the river has been
conferred by statute.

2. The offense charged is not an offense against the State.

3. There is not a statute extending magisterial districts or
the jurisdiction of them beyond their territorial limits.

4. We do not regard the allegation that the boat was tied to
the shore as important, as in many cases it has been held that
the boat being tied to the shore does not affect the question.

## AUTHORITIES CITED.

Kentucky Statutes, chap. 12, articles 1, 2; Kentucky Stat-
utes, sec. 198; Hundley's Lessee v. Anthony, 5 Wheaton, 375;
Fleming v. Kenny, 4 J. J. Mar., 158; McFall v. Com., 3 Met.,
394; Charter of Cities of the 1st, 2d, 3d, 4th, 5th and 6th classes;
Meyler v. Wedding, 21 R., 1006; State v. Plants, 52 Am. Rep., 211.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

The local option law is in force in the Cloverport magis-
terial district of Breckinridge county.  Appellee was indict-
ed on the charge that it rented on its steamboat known as
the "Henry Harley," in its possession and under its control,
a room, bar, and place, to another, in which he sold spirit-
uous, vinous, and malt liquors, with its knowledge and con-
sent, to Edward Gregory, at the wharf in Cloverport, while
the boat was anchored to the wharf on the Ohio river.  The
defendant demurred to the indictment, and on the hearing
of the demurrer it was agreed that the Cloverport magisterial
district is bounded as follows: "Beginning at a point on the

Ohio river (here follow several calls); thence a straight line
to the Hancock county line to William B. Beaty's residence;
thence with the Hancock county line to the Ohio river; thence
up said river to the beginning." It was agreed that the
boundary of the district should be considered on the demurrer
as if set out in the indictment. The agreement also con-
tained the following: "The town of Cloverport is located in
the district on the Kentucky side of the river, and is bounded
on the north by said river, which is a navigable stream."

The court sustained the demurrer and dismissed the in-
dictment on the ground that the acts complained of, being
done on the Ohio river, were not done within the Clover-
port magisterial district, as the lines of the district begin
at a point on the Ohio river, and, in closing, run to the river,
and thence up the river to the beginning. It is insisted for
appellee that the judgment is right, and that the territorial
limits of the district extend only to the river, and do not in-
clude any part of it.

The boundary of Kentucky extends to the northern shore
of the Ohio river, at low water mark. In the act of February
11, 1820, after the boundaries of the State were defined,
it was enacted: "The sovereign power and jurisdiction of the
Commonwealth of Kentucky extends to and over the entire
soil and waters within the limits described in the preceding
section, except so far as she may have ceded jurisdiction to
the United States for national purposes. Each county in
this Commonwealth, whose boundary is described in part
by the Mississippi and Ohio rivers, shall be considered as
bounded in that particular by the State line; and the islands
thereof shall be within the respective counties holding the
main land opposite thereto, within this State; and the
several counties and tribunals thereof shall hold and exercise

jurisdiction accordingly." Ky. St.; 1903, section 198. By sections 1078-1090, Ky. St., 1903, the several counties are required to be laid off into magisterial districts, and it was not contemplated that any portion of the county should be left out of the districts thus provided for; the statute requiring the commissioners in each case "to divide the county into not less than three nor more than eight justices' districts." In calling for the Ohio river as the northern boundary of the Cloverport district, which bordered on it, the commissioners followed the language used by the Legislature in creating the counties bordering on the Ohio river, so far as we have seen. The district begins at a point on the Ohio river, and runs thence to a given point in Breckinridge county. The beginning point is not fixed on the south bank of the river. The only designation is, "on the Ohio river." The natural meaning of this is that the district line begins in the line of the county on its northern shore, for it can not be presumed that the commissioners intended to leave out any part of the county in the division which they made. The same construction must be given to the closing line, "thence up said river to the beginning," for the line of the district runs to the river with the Hancock county line, and all that part of Breckinridge county next to Hancock was plainly intended to be embraced in this magisterial district. There is nothing in the calls to indicate that it was contemplated that the line of the district should stop short of the northern limit of the Hancock county line, and the contrary is shown to have been the intention by the last call, which runs, "thence up said river to the beginning," which is the point "on the Ohio river." In the case of patents calling to begin on a navigable stream, and to run with it, the rule in this State is that the title to the bed of the river passes to the middle of the stream. Lumber Co. v. Green, 87 Ky.

Commonwealth v. Louisville & Evansville Packet Co.

257, 10 R., 139, 8 S. W., 439; Miller v. Hepburn, 71 Ky., 326; Asher Lumber Company v. Lunsford, 30 S. W., 968, 17 Ky. Law Rep., 245; Cockrell v. McQuinn, 20 Ky., 61. But as the State of Kentucky includes the whole of the Ohio river to the northern shore at low-water mark, its sub-divisions calling to begin on the river and run with it are not to be limited to the thread of the stream, but must go to the State line. In the construction of every document, the aim of the court is to arrive at the intention of the makers, and give fair effect to it; and, as the counties of the State bordering on the Ohio river extend to the northern limit of the State. the magisterial districts bordering on the river must be given the same limit, for it was manifestly not the purpose of the Legislature that any part of a county should be left out, and be not included in any of the districts. To illustrate: If an island was formed in the Ohio river between the upper and lower corners of the Cloverport district, would it be maintained that this island was not a part of the district? Or if, in times of low-water, sand bars are left along the Kentucky shore, would it be said that these, though land in Kentucky, and in Breckinridge county, belonging to the adjoining proprietors, are not in the district? The purpose of establishing magisterial districts is to secure police protection from local officers, and this is just as necessary on the river as on the land. In Welsh v. State, 25 N. E., 883, 9 L. R. A., 664, the Supreme Court of Indiana affirmed a conviction where the defendant had been fined for selling whisky on the Ohio river in violation of the license laws of Indiana. The jurisdiction of Indiana and Kentucky on the river is concurrent, and no one can with impunity violate the laws of either State on the river.

Judgment reversed and cause remanded, with directions to overrule the demurrer to the indictment.