CASES 56-60—PETITION—OCTOBER 23.

# Miller, &c. v. Hepburn.

Same v. Hancock, &c.          Same v. Rogers.

Same v. Duncan.               Same v. Pope.

APPEALS FROM JEFFERSON COURT OF COMMON PLEAS.

ACCRETIONS ON THE BANK OF THE OHIO RIVER—HOW APPORTIONED.—Riparian proprietors of lots originally fronting on the Ohio River are entitled to the land added thereto by accretion, to be ascertained by extending the original river frontage of the respective lots as nearly as practicable at right-angles with the course of the river to the thread of the stream. See opinion for an illustrative diagram showing the application of the principle of the decision in this case.

ST. JOHN BOYLE, . . . . . . . . For Appellants,

CITED

> Hardin, 259, McCracken v. Sanders.
> 7 Cow. 761, Adams v. Rockwell.
> 6 Wend. 469.    16 Wend. 285.    10 Wend. 105.
> 9 New Hampshire, 473, Gray v. Berry.
> 3 Sneed, 448, Merriwether v. Larmon.
> 3 B. Monroe, 481, Bowling Green v. Hobson.
> 8 B. Monroe, 236, Rowan's ex'rs v. Portland.
> 4 Sandford, 202, O'Donnell v. Kelsey.
> 2 Cush. 199, Knight v. Wilder.
> 1 Black, 209.        9 Cush. 544, 552.
> 3 Bush, 266, Berry v. Snyder.
> 2 J. J. Marshall, 161, Bruce v. Taylor.
> 1 Littell, 66, Smith v. Dudley.
> 2 Bibb, 124, Robinson v. Conn.

Miller, &c. v. Hepburn.

6 Bush, 133, Ford v. Buckeye Insurance Co.
1 Bush, 455, Keith v. Amende.
4 Bush, 20, Hykes v. Crawford.
5 Bush, 595, Bacon v. Hutchings.
36 New Hampshire, 578, Orr v. Headley.
35 Pennsylvania, 409, Hagey v. Detweiler.
32 New York, 561, Vosburgh v. Teator.
14 Missouri, 482, Taylor v. Zepp.
30 Missouri, 33, Lindell v. McLaughlin.
23 Arkansas, 708, Jordan v. Deaton.
16 Missouri, 274, Blair v. Smith.
11 Johnson, 126, Jackson v. Van Corlear.
32 Barbour, 347, Laverty v. Moore.
11 La. Ann. 699, DeLord v. New Orleans.
17 Pick. 40, Deerfield v. Arms.
18 Howard, 150, Johnson v. Jones.
14 Allen, 85, Wonson v. Wonson.
33 N. Y. (6 Tiff.) 472, People v. Canal Appraisers.

WILLIAM PRESTON, .⎫
M. C. JOHNSON, . .⎬ . . . . . . . . For Appellees,
JOHN MASON BROWN,⎭
                        CITED
Brown on Statute of Frauds, section 75.
Angell on Tide-Waters, 250, 251, 255.
Angell on Water-courses, section 56.
Civil Code, sections 362, 364, 371.
1 Littell, 66, Smith v. Dudley.
2 Bibb, 126, Robinson v. Conn.
4 Metcalfe, 373, Byassee v. Reese.
2 Bibb, 506, Gay v. Moffett.
1 Littell, 261, Shearer v. Clay.
2 Cush. 199, Knight v. Wilder.
2 Smith's Leading Cases, 227, Devaston v. Payne.
4 Sandford, 209, O'Donnell v. Kelsey.
2 Blackstone, 262.
3 Barn. & Cress. 91, King v. Lord Yarborough.
2 Duvall, 16, Jones v. McCauley.
4 Bush, 289, Union Insurance Co. v. Groom.
3 Bush, 266, Berry v. Snyder.
6 Bush, 669, Jamison v. Pettitt.
10 Barbour, 333, Davis v. Townsend.
11 La. Ann. 699, DeLord v. New Orleans.
14 Allen, 85, Wonson v. Wonson.

17 La. Ann. 528, Municipality No. 1 v. Municipality No. 2.
14 B. Monroe, 145, Morrison v. Thurman.
34 Barbour, 528, Troy v. Corning.
20 Pickering, —, Gray v. Bartlett.
16 B. Monroe, 172, Alves v. Henderson.
18 B. Monroe, 289, City of Covington v. McNickle's heirs.

JUDGE HARDIN DELIVERED THE OPINION OF THE COURT.

The appellees, claiming title as the children and represen-
tatives of William Preston, deceased, to some lots of ground
in the city of Louisville, situated near the foot of Jackson
Street, and between Fulton Street and the Ohio River, insti-
tuted their actions against the appellants in June, 1867, for
the recovery of parts of the lots then in the defendants' pos-
session, they owning and occupying an adjacent lot, which,
with those of the plaintiffs and the interference in controversy,
is shown by the diagram here inserted; the plaintiffs owning
in the largest lot, No. 4, the lots in controversy, which when
laid off in 1830 abutted on the *then* line of the river at the
letter G, but now, as contended by the appellees, are in con-
sequence of an alluvion formed in front of them, and the
consequent recession of the river, prolonged to the present
water-line at the letter H; while the defendants, who own the
lot No. 5, claim that as the accretion was formed and the river
receded their west line, which terminated originally at the
letter G, was gradually extended till it reached the present
water-line at the letter K, crossing each of the plaintiffs' lots
extended, as claimed by them, so that the ground in dispute is
that indicated by the letters G, H, I, J.

The defenses involved both a denial of the alleged title of
the plaintiffs and an assertion of right in the defendants for
substantially the following reasons: *First*, that the law con-
tinued the natural course of their side-line from the point G
toward K as the river receded; *second*, that as the accretion
was formed said line was extended and adopted by the concur-

Miller, &c. v. Hepburn.

rence and acquiescence of the owners and tenants in possession of the adjacent lots; *third,* that the plaintiffs were barred by continued adverse possession of the ground in controversy.

The court was of the opinion that plaintiffs, as *riparian* proprietors of their lots originally fronting on the river, were

entitled to the land added thereto by accretion, to be ascertained by extending the original river frontage of the respective lots, as nearly as practicable, at right-angles with the course of the river to the thread of the stream, and rendered judgments in accordance with that conclusion, and these appeals are prosecuted for the reversal of those judgments.

The first question to be decided is, whether the rule adopted by the court for determining the extent of the plaintiffs' recovery, if they were entitled to recover at all, was correct. In the very able and ingenious argument of the counsel for the appellants in this court, the general principle is not questioned that in ascertaining the rights of a *riparian* proprietor no importance should be given to the quantity or figure of his entire tract, nor the course of its side lines; and we presume it unnecessary to resort to authority or illustration to prove that the appellants could not acquire title to the ground in controversy merely because of the oblique direction of the western side line of their lot with reference to the general course of the river. But it is insisted for the appellants, in substance, that the court erred in adopting an arbitrary method of determining the relative rights of the parties by extending the side lines of the plaintiffs' lots from their respective original *termini* on the shore as nearly as possible at right-angles with the course of the river to the center of the stream, instead of so drawing the lines as to give to each *riparian* proprietor such a proportion of the alluvial soil as the total extent of his front line bears to the total quantity of the alluvial soil to be divided, without regard to the general course of the river or the center of the stream; and we are referred to the cases of Deerfield v. Arms (17 Pickering, 41), Jones *et al.* v. Johnston, (18 Howard, 150), Johnston v. Jones *et al.* (1 Black, 209), as authority for this method of equitable apportionment.

In the first cited case it does not distinctly appear whether Deerfield River, on which the alluvion was formed, was techni-

cally and according to the common law a navigable stream; all rivers being thereby deemed not navigable "above where the sea ebbs and flows." But it is apparent from the reasoning of the court in that case, as well as the other two cases cited, that the rules intended to be applied were those usually adopted for determining the relative rights of riparian owners of the banks of navigable rivers and lakes, and the division of flats on the sea-shore, or on coves in which the tide ebbs and flows. And as is properly said in the able and lucid opinion delivered by the special judge who decided these cases in the court below: "The rules thus laid down may be eminently proper in the division of the accretion upon the shores of navigable streams where the tide ebbs and flows, because the proprietor adjoining the edge of such river only owns to the water's edge, and low water is the end of the line; and hence, as the shore changes, the respective lines on such shore must change; but in a river not navigable—that is, where the tide does not ebb and flow—the proprietor does not stop at low water, but by permission and sufferance of the state he goes to the middle of the stream, and must have his shore-front to the middle; and it is a matter of little consequence whether islands are formed, or whether there is an accretion on the shore, or whether the water remains as it was when he received his grant; he is entitled to his front to the center of the stream."

With reference to the distinction here taken, we are aware that jurists have differed in opinion whether in this country, as in England, the existence of tide-water should be the test of navigability, so far as riparian rights may be involved, the Ohio and many other fresh-water streams being practically navigable, subservient to commerce, and subject to maritime jurisdiction, though above and unaffected by the tide. But whatever contrariety of authority there may be on that question, it may be regarded as settled in this state in favor of the

common law rule since the decision of the case of Berry v. Snyder, &c., 3 Bush, 266.

With a proper application of that rule in this case the solution of the question under consideration can not be difficult. It does not appear that the general course and central thread of the river opposite to the ground in .dispute can not be ascertained under the judgment in these cases with sufficient certainty for practical purposes; and if it be true, as in effect adjudged by the lower court, that the several owners of the river-bank at which the accretion was formed were entitled to an extension of the original river-fronts of their lots across the accretion, upon lines drawn as nearly as practicable at right-angles with the center of the river, the only difficulty would seem to be in determining the course on which these lines should be drawn with reference to each other and the thread of the river at the terminus of each of the lines, which would be necessarily parallel or convergent or divergent, as the relative lengths and courses of the original shore-line and central line of the river might differ.

The principle of equitable apportionment contended for by the counsel for the appellants is manifestly right when applied in the division between conterminous proprietors of an alluvion on a lake or sea-shore, or even on the bank of a river below tide-water, where the titles of the riparian owners are limited by the water's edge, and the law indicates no particular course for the extension or enlargement of their boundaries over the alluvial soil; but it is clearly inconsistent with the right of each owner of the bank of a river above tide-water to carry his title to the middle of the stream.

The conclusion of the court of common pleas on this point is not, in our opinion, inconsistent with the adjudged cases cited as authority against it when properly applied, and it is moreover substantially sustained by several decisions, among which may be cited the cases of Knight v. Wilder, 2 Cush.

199 ; Larrimer v. Benson, 8 Mich. 18 ; and Rice v. Ruddeman, 10 Michigan, 125.

But it is further contended for the appellants that whatever may have been the legal right of themselves and those under whom they claimed to prolong their western line over the accretion as it was formed, it *was* so prolonged according to its original course, and recognized and established as the true line by the adjacent owners and their tenants. It appears that Jesse Vansicles, under whom the appellants claim as remote vendees, took possession of the large lot, No. 5, in 1849 or 1850, and that he did at one time undertake to extend the line as it is now claimed by the appellants; but his right to do so was disputed by the tenants of the appellees, and the attempt was not persisted in, although then and afterward a path or road-way extended to the river near where the line would be as claimed by the appellants.

We are not satisfied from the evidence that the supposed continuation of the line was at any time sanctioned or agreed to by the appellees; but if it was, the agreement, whether express or implied, existing in parol only, did not divest the plaintiffs of their title. (Robinson, &c. v. Conn, 2 Bibb, 124; Smith v. Dudley, 1 Littell, 66.)

As to the question of limitation, it is sufficient to say that it does not appear that the appellants were in the adverse possession of the ground in controversy at an earlier period than 1860 or 1861, and the action was not therefore barred.

Wherefore, no error being perceived in the judgments, the same are affirmed.