DAVIS *v.* ARKANSAS FIRE INSURANCE COMPANY.

Opinion delivered January 30, 1897.

FRAUDULENT CONVEYANCE—EVIDENCE.—The positive testimony of two witnesses that a transfer of cotton by a debtor was made *bona fide* for the purpose of paying a valid debt will not be overturned by proof that the transferee was a son-in-law of the debtor, that the transfer was made after the debtor was sued by a creditor and that the transferee permitted the debtor to direct and superintend the sale of the property.

SAME—RELIEF IN EQUITY.—The statute of 1887 which dispenses with
the necessity of obtaining a judgment before commencing a suit
to set aside a fraudulent conveyance (Sand. & H. Dig. § 3134) does
not dispense with the necessity of proving the debtor's insolvency,
under the rule that equity will not lend its aid when the remedy
at law is full and adequate.

Appeal from Pulaski Chancery Court.

DAVID W. CARROLL, Chancellor.

### STATEMENT BY THE COURT.

Suit in equity by Arkansas Fire Insurance Company
against Zeb Ward, Oscar Davis, and J. E. Joyce &
Company to set aside a transfer of cotton alleged to be
fraudulent, and to subject said cotton to the satisfaction
of plaintiff's judgment.

On the 11th day of December, 1893, previous to the
commencement of this suit in equity, the Arkansas Fire
Insurance Company brought suit at law against Zeb
Ward, one of the defendants to this suit, and afterwards
recovered judgment against him for the sum of $5,000.
The transfer of cotton which the insurance company
seeks to set aside by this suit in equity was made by
Zeb Ward to Oscar Davis, two days after the commence-
ment of the action at law. The other circumstances
under which this transfer of cotton was made were as
follows: A son of the defendant Zeb Ward owed the
German National Bank of Little Rock $3,227.50, for
which sum the bank held his note. The defendant Oscar
Davis, a son-in-law of defendant Zeb Ward, was in-
dorser upon this note of the son. Zeb Ward, claiming to
be indebted to his son in the sum of $2,500 for the rent
of a farm, transferred, with consent of his son, certain
bales of cotton to Oscar Davis, to secure him as indorser
upon said note; the proceeds of the cotton, when sold,
to be applied to the payment of the note. The cotton
was in the possession of defendants Joyce & Company,
who were commission merchants, and held a lien upon

the cotton for supplies advanced. The cotton was transferred on their books from Ward to Davis, but they still held possession of it. Davis afterwards told Joyce & Company to obey any directions of Ward in regard to the sale of the cotton, and, when sold, to make "the check with account of sales either to the order of himself or Ward." Davis testified that he did not intend by this to allow Ward to appropriate the proceeds of the cotton, but, as Ward was interested in the cotton, he intended only to permit him to direct the sale of it for the benefit of himself (Davis).

The chancellor found the issues in favor of plaintiff, that the transfer was fraudulent, and rendered a decree in its favor from which an appeal was taken to this court.

*Ratcliffe & Fletcher* for appellant.

The complaint fails to allege *insolvency*, and is bad. 11 Ark. 411: 29 *id.* 612; 31 *id.* 546; 51 *id.* 390; Sand. & H. Dig., secs. 3134, 5919; 56 Ark. 481. The facts constituting the fraud must also be alleged. 51 Ark. 390. Fraud must be proved. 9 Ark. 482. Mere embarrass-, ment is no proof that a conveyance is fraudulent. 26 Ark. 23; 17 *id.* 146; 51 *id.* 390.

*S. R. Cockrill* and *Ashley Cockrill* for appellee.

This suit was properly brought in equity. 42 Ark. 236; 18 *id.* 583; 44 *id.* 381; 56 *id.* 476; Sand. & H. Dig., secs. 3060, 3065. The burden was on Davis to show title to the cotton. 58 Ark. 556–564; 55 *id.* 59. The pledge or mortgage was void as to creditors : (1) There was no delivery or change of possession. 47 Ark. 210; 54 *id.* 305. (2) Even a recorded mortgage is void as to levying creditors where the mortgagor has power to sell. 44 Ark. 310; 50 *id.* 97; 46 *id.* 122. Here there was at least legal fraud, if not actual. 47 Ark. 405. A heavy indebtedness of the grantor, together with a sale to a

relative, of necessity form strong badges or indicia of fraud. Wait, Fr. Conv. sec. 239. Proof of actual insolvency is not necessary. The property of a solvent debtor may be seized where he is attempting to put it beyond reach of process by transfer to a friend or relative. 55 Ark. 59, 60, 64. Davis was not a purchaser for value; his debt was past due. 31 Ark. 88. The burden was on him to show that the debtor's intention was innocent, and that he had abundant means left to pay his debts. 55 Ark. 59, 60, 64, etc.; ib. 116; Wait, Fr. Conv. sec. 95. There was no consideration for the sale to Davis. 65 N. W. Rep. 349.

RIDDICK, J., (after stating the facts.) The question before us is whether the evidence is sufficient to support the finding of the chancellor that the transfer of the cotton was fraudulent and void as to the creditors of Ward. The appellee first contends that the decree should be affirmed, for the reason that Davis showed no interest in the property. But if there was no evidence on this point, this contention could not avail, for the reason that the complaint of appellee alleged that the cotton had been transferred to Davis by Ward, and the object of this suit is to set that transfer aside. The answers of both Ward and Davis admit that this transfer was made, and allege that it was made in good faith, and for a valuable consideration. It stands therefore admitted that Ward made a transfer of the cotton to Davis. There is no conflict on this point, but the dispute concerns the purpose and object of such transfer. Ward testified that, being indebted to his son in the sum of $2,500 for rent of a farm, with the consent of his son he turned this cotton over to Davis, to secure the payment of a note given by his son to the German Bank, and upon which Davis was indorser. If this be true, the conveyance was made upon a

*Sufficiency of proof of fraud.*

valuable consideration, for, if Ward owed his son money, it was immaterial whether he paid it direct to his son or to the creditors of his son, if his son consented to such payment. We think the evidence clearly shows that the son owed the bank; that Davis was indorser upon his note; and that Davis, since the commencement of this suit, has paid the note, amounting to over $3,000. As to whether Ward owed his son, there seems more room for doubt. But Ward testified that he did owe his son for the rent of a farm, and there does not seem anything to contradict him on this point. This transfer of cotton to his son-in-law, Davis, following soon after the commencement of a suit against Ward, coupled with the fact that he continued with consent of Davis to direct and superintend the sale of the cotton, was calculated to cast suspicion upon the transaction; yet we are unable to agree that, standing alone, it was sufficient to overturn the testimony of Davis and Ward, and justify a finding that the transfer was fraudulent. The fact that Davis permitted Ward to direct and superintend the sale of the cotton is not altogether inconsistent with an honest purpose, for the cotton was not transferred to secure a debt Ward owed Davis, but to secure the payment of a debt his son owed the bank, and for which Davis was liable as indorser. Under these circumstances it is not unreasonable that Davis should be willing to have Ward act as his agent in the sale of the cotton.

When relief granted in equity. There seems to us to be a failure of proof on another point. It was not shown that Ward was insolvent, or that this transfer tended in any way to hinder and delay the insurance company in the collection of its judgment. Courts cannot take judicial notice of insolvency, but it must be proved. The proof shows that several judgments had been rendered against Ward, but there is nothing to show the amount or value of property he

owned. He may, so far as this evidence discloses, have been a very rich man, and the property transferred may have in no way impaired his ability to pay his indebtedness. Formerly, the rule was that the creditor must first recover judgment at law, and have execution issued and returned *nulla bona*, before he could come into equity to ask that a transfer of property made by his debtor should be set aside as fraudulent. The courts of equity required the creditor to show in this way that the ordinary legal remedies were inadequate. The statute of 1887 dispenses with the necessity of obtaining a judgment before commencing a suit to set aside a fraudulent conveyance, and provides that in such cases "insolvency may be proved by any other method." Secs. 3134 and 5919, Sandels and Hill's Digest. The former decisions requiring judgment, execution and return of execution unsatisfied were based on the rule that equity will not lend its aid when the remedy at law is full and adequate. It would therefore seem that, following the same reason, it is still necessary to show that the remedy at law was inadequate, by showing that the debtor has not other sufficient means from which the claims of the creditor may be satisfied, or showing other facts sufficient to call for the interference of a court of equity. But, apart from that question, in the absence of proof that the debtor was insolvent, it would require much stronger evidence to overcome the testimony of the debtor that the conveyance was made in good faith and for a valuable consideration. The fact that a debtor is insolvent is not of itself sufficient to establish a fraud in a conveyance made by him, but the financial condition of the debtor at the time of the transfer and afterwards, when taken in connection with other facts in proof, is generally an important circumstance in determining whether the transaction was fraudulent or not.

Our conclusion is that the evidence is not sufficient to sustain the finding that the transfer was fraudulent. The judgment of the chancery court must therefore be reversed, and the cause remanded, with an order that the complaint be dismissed for want of equity.