## DAVIS *v.* YONGE.

### Opinion delivered February 4, 1905.

| 74 | 161 |
|----|-----|
| e74 | 189 |
| 75 | 570 |
| f76 | 254 |

| 74 | 161 |
|----|-----|
| 84 | 230 |
| 84 | 231 |

1. EXCHANGE OF LAND SUBJECT TO LIEN—RIGHT TO FOLLOW PROCEEDS.— The equitable doctrine of following the proceeds of property subject to a lien will not be extended to the case of a sale or exchange of land subject to the lien of a judgment at law, as the judgment can be enforced by levy on the land so sold or exchanged. (Page 164.)

2. HOMESTEAD—LIEN OF JUDGMENT.—A judgment is not a lien upon a homestead. (Page 165.)

3. FRAUD—GIFT.—Where land purchased in the name of a married woman was in fact paid for by her husband out of his own funds, it should, so far as his creditors are concerned, be regarded as his land, and to sustain her title she must show that her husband was solvent and able to make the gift. (Page 165.)

4. HUSBAND AND WIFE—USE OF WIFE'S MONEY.—When a wife allows her husband to use her money as his own for a long period of time, and thus to purchase property with it in his own name, and to obtain credit on the faith of his owning it, she will not be allowed to claim such property as against his creditors. (Page 166.)

5. RELEASE OF HOMESTEAD AS CONSIDERATION.—The transfer to a wife of $400 out of the proceeds of his homestead, which sold for $5,000, in consideration of her joining in his conveyance thereof and relinquishing dower, is not so disproportionate as to evidence fraud. *Baucum* v. *Cole*, 56 Ark. 259, followed. (Page 167.)

—6

6. INSOLVENCY—EVIDENCE.—The mere fact that a judgment for a few hundred dollars had been recovered against one is not sufficient to show that he was insolvent.' (Page 167.)

7. REMOVAL OF CLOUD—REFUNDING TAXES.—In a suit by the owner of land to remove an execution sale as a cloud on the title, plaintiff will be required, as a condition of relief, to refund the taxes paid by the execution purchaser, with interest. (Page 167.)

Appeal from St. Francis Chancery Court.

EDWARD D. ROBERTSON, Chancellor.

Suit by Mrs. Mollie E. Davis and another against Jas. Yonge and F. E. White to remove a cloud on her title. Defendants filed an answer and cross bill, alleging that plaintiff's title was a cloud on their title. Judgment was for defendants, from which plaintiffs take appeal. Reversed.

### STATEMENT BY THE COURT.

About 1893 a judgment for some six or seven hundred dollars was rendered in the St. Francis Circuit Court in favor of Jas. Yonge and F. H. White against J. M. Davis and other bondsmen of a sheriff of that county.

An appeal was taken by the bondsmen to the Supreme Court. Davis at this time owned 200 acres of land in St. Francis County, upon which was the residence where he lived. In the fall of 1893, while the case above mentioned was pending in the Supreme Court, he sold this land to one Dennis, and executed a deed to him for it in January following. The price paid by Dennis for the land was $5,000, but a large portion of this was consumed in paying the mortgages and other debts of Davis. Besides these debts and liens which were paid off, Dennis required Davis to furnish security against the judgment above referred to which had been rendered against Davis and other bondsmen of Wilson, and which was a lien on this land, so that out of the $5,000 only $950 was paid to Davis in cash. He soon afterwards used $400 of this money to purchase six or seven hundred acres of land in that county, and caused the conveyance to be made to his wife, Mollie E. Davis. Afterwards the judgment against him and the other bondsmen was affirmed by the Supreme Court, and an

execution was levied on 320 acres of this land, which had been purchased in the name of his wife, the remainder of the land purchased having been previously disposed of by Davis and his wife. The 320 acres levied on were sold under the execution, and purchased by Yonge and White, the execution creditors. Before the time allowed for redemption expired, Mrs. Davis brought this action to set aside and cancel the deed as a cloud on her title.

The defendants appealed, and filed an answer and cross complaint, in which they allege that Mrs. Davis had no money or other means with which to purchase land, and that the land was bought and paid for by her husband, J. M. Davis, who at the time was involved in debt, and the conveyance taken in the name of his wife to put the property beyond the reach of his creditors, and especially to hinder and delay the defendants, Yonge and White, in the collection of their debt. They asked that the deed be set aside, and that she be declared to be a trustee holding the legal title for the use and benefit of defendants, Yonge and White, purchasers at the sale under the execution against her husband.

Mrs. Davis filed an answer to the cross complaint, denying the allegations thereof, and further alleged that the land in question was purchased by her with her own money, and was her property.

James Yonge having died during the pendency of the action, his heirs were made parties defendant, and the cause revived against them.

Mrs. Davis having, after suit commenced, sold a portion of the land to W. T. Bonner, he was allowed to become party plaintiff with her.

On the hearing the chancellor found that there was no equity in plaintiff's complaint, and that Yonge and White were entitled to have a charge fixed on the land to the extent of the balance due them on their judgment and the amount of taxes they had paid on the land, with interest at six per cent., the whole amounting to $420.20; and he gave judgment accordingly. Plaintiff appealed.

*McCulloch & McCulloch,* for appellants.

The property in controversy was the separate estate of Mollie E. Davis, and the transaction is free from fraud. Wait, Fraud. Conv. § 299; Rodg. Dom. Rel. § 255; 110 Ind. 561; 115 Ind. 474; 30 Fed. 401; 63 Ark. 412; 70 Ia. 137; 37 Kan. 750; 68 Wis. 563; 84 Ala. 592; 75 Ia. 112; 36 Kan. 610; 46 S. W. 310; 105 Fed. 16; 108 U. S. 66; 67 Ark. 97; 133 N. Y. 568. The consideration was sufficient. Rodg. Dom. Rel. 217; 77 Ill. 555; 66 Mich. 249; 85 Va. 390; 46 Ark. 542; 56 Ark. 259. Any conveyance of a homestead is not in fraud of creditors. 52 Ark. 101; 44 Ark. 180; 57 Ark. 232; 56 Ark. 253.

*N. W. Norton,* for appellees.

The decree of the chancellor was correct; the burden was upon appellants to establish their title. 50 Ark. 42; 22 Ark. 429; 30 Ark. 79; 2 Perry, Trusts, § 678; 94 U. S. 22; Schouler, Dom. Rel. § 119.

RIDDICK, J., (after stating the facts.) This is an action by a wife to set aside and cancel a sale of land claimed by her, which sale had been made under an execution issued against her husband. The execution creditors resist her action on the ground that the land was the property of her husband, and that the title thereto had been placed in the name of his wife in a fraudulent effort to shield it from his creditors. The price which was paid for this land, which was conveyed to the wife, was $400, and this money was obtained by the sale of a tract of 200 acres owned by the husband, and on which was his home, and which he sold for $5,000. But before this sale was made a judgment in favor of Yonge and White, the defendants in this case, had already been rendered against the husband and other sureties on a sheriff's bond, and this judgment was a lien on the land sold by the husband, subject to the claim of homestead. For this reason, the husband was compelled to give the purchaser indemnity against the enforcement of this judgment in the event it was affirmed by the Supreme Court, to which court the case had been appealed. The judgment was afterwards affirmed, but there is nothing in the evidence to explain why the judgment was not enforced by a levy upon this land, upon which the judgment was a lien, to the extent that it exceeded the area allowed by law for

a homestead. Counsel for defendants say that, the judgment being a lien on this land, they have a right to follow the proceeds of such lien property, when traced; but we see no occasion for the application of such doctrine, for the sale of the land by the husband did not affect the lien of the judgment, and the judgment could have been enforced against it as well after the sale as before. There was no occasion to seek relief in a court of equity when there was a plain remedy at law. So the question of a lien on the land sold by the husband can have but little effect on the decision of the case. This is true not only for the reasons stated, but because the larger part of the land sold was a homestead upon which no lien attached by reason of the judgment.

But if this land purchased in the name of the wife was in fact bought and paid for by the husband out of his own funds, it would, so far as his creditors are concerned, be regarded as his land, and the wife could not sustain the action to cancel the execution sale without showing that her husband was solvent and able to make the gift, the burden being on her to make out her case. There is no testimony on that point except that of the plaintiff, Mrs. Davis, and her former husband, J. M. Davis, from whom she had been divorced after the land claimed by her was sold at the sale under the execution. The substance of their testimony is that Davis, some twenty years before the sale of his homestead, had obtained from his wife about $1,300, which he had used in paying off judgments that were liens on the same homestead, and when the homestead was sold he repaid her $400 of the money he owed her, and with this money she purchased the land in controversy.

Mrs. Davis, in her first deposition, stated the facts substantially as they were stated by her husband, but in a second deposition, being asked to state fully the circumstances under which the $400 were paid to her by her husband, she said that when the homestead was sold to Dennis she refused to sign the deed until her husband agreed to pay her money to buy her another homestead, and that, in compliance with this agreement, he paid her the $400 with which she bought the land in controversy, and that this sum was the only portion of the $1,300 which he received from her that he ever repaid her.

After considering all the facts, we are of the opinion that the allegation of the complaint that the property in controversy belonged to the plaintiff is sustained by the evidence. We attach but little importance to the claim of Mrs. Davis that her husband owed her for money obtained from her father's estate. Conceding that this was true, yet, as the money had been obtained by the husband some twenty odd years before the sale of the homestead in question, and had been, with the acquiescence of his wife, used by them to pay his individual debts, it is now too late for the wife to set up a claim to such money as against the creditors of the husband. It is no doubt just and right for a husband to return such funds, however stale the claim may be, if he can do so without infringing upon the rights of his creditors; but an insolvent debtor is not allowed to turn over his property to his wife, and let his creditors go unpaid, under the pretense of settling a shadowy claim for money of his wife which he received and spent many years before. As it would often be impossible for the creditor to dispute such ancient claims, to allow them to be set up in that way against the creditors would furnish an easy way for an insolvent debtor to shield his property from his creditors, while at the same time retaining all the essential benefits of the same to himself and family. For this reason when a wife allows her husband to use her money as his own for a long period of time, and thus to purchase property with it in his own name, and to obtain credit on the faith of his being the owner of it, she will not be allowed to claim such property as against his creditors. *Driggs* v. *Norwood*, 50 Ark. 42.

But the relinquishment of dower and homestead rights on the part of the wife upon a sale of the land by the husband is a sufficient consideration to support a reasonable settlement upon her out of the proceeds of the sale. *Baucum* v. *Cole,* 56 Ark. 259. Now, Davis sold his homestead for $5,000, and out of the proceeds, according to the testimony of himself and wife, he paid her $400, a sum that was not so out of proportion to the consideration as to indicate fraud.

While the testimony of a husband and wife tending to uphold a transfer of property to a wife against claims of the husband's creditors might ordinarily be looked upon with some suspicion, as coming from interested parties, yet that is not so here, for

Davis and his wife have been divorced, and his testimony may be considered as that of a disinterested witness, for he has now no pecuniary interest in having her retain the land.

As the testimony shows that'this land was purchased by the wife, or for her, out of the proceeds arising from the sale of her homestead, and that the amount settled upon her was not unreasonable, this makes out at least a *prima facie* case in her favor; for, although the money came from her husband, it arose from a sale of property in which the wife had an interest, and upon which, to the extent of the homestead, the creditors had no lien, and no right to subject to the payment of their debts. *Baucum* v. *Cole,* 56 Ark. 259.

There is nothing to overcome this *prima facie* case made by the plaintiff; for it is not shown that the husband was insolvent, and that the transfer of this property to the wife was colorable only. The mere fact that a judgment for a few hundred dollars had been recovered against the husband as surety on a sheriff's bond is not sufficient to show insolvency, and no reason is shown why the husband should have desired to have only a colorable transfer of property made to his wife, or why his creditors should be allowed to subject this property of the wife to their debts. We have here, then, the case of a man, not shown to be insolvent, who sells his homestead and the land attached thereto for $5,000, devoting the larger part of it to the payment of his debts, and giving to his wife $400 thereon—not more than one-fifth of the amount for which the homestead proper was sold— with which she purchases, or he purchases for her in her own name, the land in controversy. Settlements of that kind upon the wife have been upheld, even in cases where the husband was shown to be insolvent. *Hershey* v. *Latham,* 46 Ark. 542; *Baucum* v. *Cole,* 56 Ark. 259.

On the whole case, we are of the opinion that the equities are in favor of the plaintiff, and that her title should be upheld. *Davis* v. *Insurance Company;* 63 Ark. 412; *Bertrand* v. *Elder,* 23 *Id.* 505; *Stephenson* v. *Cook,* 64 Iowa, 265; *Winchester* v. *Charter,* 102 Mass. 272; 2 Bigelow on Fraud, 183.

It was shown that the defendants, after they purchased at the execution sale, had paid taxes on the land amounting, with interest, to the sum of $138.06, and we are of the opinion that

relief should be granted to the plaintiff on condition that she pay this sum with interest at six per cent. from the date of the decree.

For the reasons stated, the judgment of the chancery court will be reversed, and the cause remanded with the direction that a decree will be entered cancelling the deed of defendants as a cloud upon the title of plaintiff; but that so much of the decree as made the taxes paid by defendants and interest thereon a charge on the lands be sustained. It is so ordered.

McCULLOCH, J., was disqualified.