## Johnson v. Lainhart.

(Decided June 10, 1938.)

J. R. LLEWELLYN for appellant.
ALLEN HARRISON for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

The appellant, Hector Johnson, and appellee, Tyra Lainhart, are the owners of two lots respectively situated on the north and south banks of Pigeon Roost creek, which runs in a westwardly direction, in McKee, Jackson County, Kentucky.

These lots, as is shown by the calls of their respective deeds, begin on the east at directly opposite points on the north and south banks of Pigeon Roost creek, their dividing property line running with the thread of the stream, and end at directly opposite points thereof where Pigeon Roost creek converges with Bill's branch, which enters it from the north. The junction of these two streams forms the beginning point of Indian creek.

The record shows that the appellant has been the owner of his lot, located on the north side of the creek, for some twenty-odd years under a conveyance thereof to him by deed of date of November 6, 1913, containing the following call of its creek line:

"Beginning at a stone at the north bank of Indian Creek, at the McKee and Irvine road and runs with said creek N. 60½ W. 8 poles to a stake; then with said creek S. 76½ W. 10 poles to the mouth of Bill's branch."

The appellee, Lainhart, acquired his lot, lying on the south side of the creek, by deed executed him thereto on July 23, 1907, containing the following north boundary call of his lot:

"Then with the said division fence north to the creek then near east with the creek to David street."

It appears from these calls of their deeds, as well as by a survey and plat made of their respective north and south property lines, that they run almost due westwardly with the thread of the creek, for a distance of eight poles, and then make a 16 degree turn southwestwardly with the creek for a distance of ten poles.

It further appears, and is admitted, that during this course of years the force and pressure of the current of the stream, in striking its north bank where it turns south, has washed away or somewhat deeply cut into the north bank, with the result that the south line of the appellant's lot has been changed and moved northwardly for a distance of some feet, involving the loss to him of perhaps one-eighth of an acre of land. On the other hand, it appears that there has been a corresponding gain by accretion on the south side of the stream or the north bank of appellee's lot, there having been slowly formed and deposited next the lower or western end of his creek boundary a sand and rock bar; or, that is to say, his creek bank has moved northwardly to the new bank of the present channel of the stream.

The appellant, Johnson, feeling aggrieved by this washing away of his creek bank, beginning at the point where the creek changes its course, or at the beginning of the ten pole call of his boundary, and seeking to avoid the further washing away of the south side of his lot, began the construction of a rock wall, commencing with and extending for some distance along the western end of the first or eight pole call of the creek boundary and at the beginning of the second or ten pole call thereof, where it changes its bearing southwestwardly towards the new creek bank of the appellee, Lainhart, so as to turn the current of the creek away from his or the north bank towards and against that of the appellee, Lainhart.

It is admitted that this western part of the wall structure the appellant is building extends for a distance of some four to eight feet into the present channel of the stream, but is yet within the appellant's creek boundary line as it originally existed before its channel changed.

The appellee, Lainhart, as plaintiff below, brought this suit in equity against the appellant, alleging that they having each acquired their lots, abutting on opposite sides of the stream, under deeds giving the boundary lines thereto as up to and with the stream, their divisional boundary line followed and ran with the then thread of the stream, and continues to run with the thread of the stream, even when shifted by accretions made to either its north or south bank; that the current of the stream has caused a sand and rock bar to be formed on the south bank of the creek, which has caused the bed of the creek to move northwardly or towards defendant's lot and that his (plaintiff's) lot extended to the thread of the stream of such new channel of the creek.

Further, he alleged that defendant had wrongfully placed and was building this rock wall into the creek, so as to thereby change its natural course and turn the current of the creek away from his (Johnson's) bank and back towards plaintiff's bank, which would result in washing it away and thereby damaging him, for which reason he asked that the defendant be mandatorily enjoined to remove that portion of the wall which the defendant had built and extended out into the bed of the creek.

Appellant (defendant below) filed answer, denying the material allegations of plaintiff's petition, and also a counterclaim. He alleged that he had built the wall only to protect his bank of the creek against the pressure of its current, which had been turned against his bank by reason of the plaintiff's having thrown brush, rock and other débris into the side of the creek next his fence and along the former bank of the creek, with the result that the natural flow of the creek was obstructed and the current of the stream deflected over against defendant's bank. He further alleged that within the last year or two, due to high tides in the stream and the creek's bed being thus filled up by the appellee, the channel of the creek had changed and had washed away the defendant's bank. Under such circumstances, he claimed that he was building the wall merely to correct and avert the damage which was being done his lot through the wrong of the plaintiff in having filled up the old bed of the stream, as stated, next his land.

Plaintiff denied that he had ever, at any time, attempted to fill up the bed of the stream next his creek bank, as charged by appellant, or at all, but that while the current of the creek had pressed against its north bank, owned by the defendant, and had washed away a part of it, such result was due to the change in the course of the creek beginning at such point, rather than to any charged filling up of the other side of the creek channel by him.

Upon these issues, joined by both pleadings and proof, and submission of the cause for judgment, the court adjudged that:

"This cause is on submission to the court for final orders and judgment. The court has examined the pleadings, proof and exhibits carefully, and in addition thereto personally went to the place mentioned in the pleadings and made personal examination of the same, including the rock wall built and being built at the time of the institution of this action.

"From the point of beginning of line of defendant's land for eight poles, the Pigeon Roost branch is straight and further up the creek for a considerable distance. At the end of the eight pole line, the creek, as well as the land line of defendant, makes a turn and change of 16 degrees. At the end of the ten pole line comes in Bill's branch, almost, if not quite, at right angles with Pigeon Roost branch. Opposite this intersection, and some above and below, is the rock bar or sediment complained of by defendant.

"The evidence shows that for some time and gradually this formation on the side of the creek abutting plaintiff's land has been accumulating, and, perhaps, the creek has changed its course to some extent on the side of the defendant, the creek running straight to the end of the eight pole line and the line of defendant changing sixteen degrees, naturally placed the current of the stream against defendant's land, and, further, Bill's branch running into the other creek was and is another cause of the formation of the rock bar, or formation on side of plaintiff. The court is not impressed with the idea that plaintiff caused the creek to divert

toward the land of the defendant, as the direction and curve of the creek, together with the current of Pigeon Roost creek and lay of the land was and is the cause of this gradual formation, and also, perhaps, of the eating in upon the side of the defendant.

"The rock wall, in part, built by defendant extends out some three or four feet into the stream as now located and if continued and if same should remain in the present position, at the lower end would cause the stream to change its course onto the side of plaintiff. The court is of opinion that from the point where the rock wall makes a turn out into the creek, it should be removed and the remainder of the wall should stand. The court is not holding that defendant should not be permitted to protect his land from the current of the creek, by placing obstructions to same along the edge of the bank where the present bed of the creek is or where the water course now flows. The court is of the opinion that there has not been a sudden change in the stream, such as would justify the turning of the current back onto the side of plaintiff. This was the purpose of the building of the wall, or at least of turning same into the creek. This the defendant admits to be his purpose. After a gradual deposit of land on the side of the property of a riparian owner, it becomes his property. The deed of plaintiff calls to run to the creek. That was true in the opinion of the court when he first purchased it, or to the creek at any point where the change was made by the natural current of the stream and by gradual formation and his title would follow the creek unless by a sudden or perceptible change. Where land is suddenly and forcibly removed from a riparian owner by inundation or current, or by a sudden change in the course of the water, so that a considerable portion is thus perceptibly transferred from one owner and deposited upon the land of another, the rule above announced does not apply, but this, in the opinion of the court, did not occur in the instant case. * * *

"It is therefore ordered and adjudged by the court that the injunction granted herein be and it is hereby made perpetual to the extent that defend-

132

ant cease to construct the wall mentioned in the petition and further, in the direction and at the place started; that he be and is hereby required to remove so much of said wall as is placed in the creek from the point where the bend * * * or change in course is made therein down the creek to the point where same now ends, and that portion up the creek from the point of change in course * * * is permitted to stand, and the defendant is given a reasonable time in which to make said removal.''

We are of the opinion that the above judgment represents a just and proper determination of the question presented, and that the court, in so deciding upon the finding of facts as made by him (which finding we are of the opinion was amply supported by the evidence, and clearly brought this finding, within the protected sphere where it should not be disturbed), properly applied the rule announced by us in many earlier cases, wherein the same question, arising upon analogous facts as those here found, was presented.

The fact as found by the court in its judgment, supra, with respect to the change in the channel of the creek away from plaintiff's creek bank and encroachment upon the defendant's or the north bank of the creek, was that this change was one that had slowly taken place over a long course of years, due both to the formation, by accretion, of a sand bar next the south or plaintiff's bank of the creek and the corresponding eating away of the north or defendant's bank of it, caused by the pressure of its current against the bank where the course of the creek turned, rather than due to any sudden change in the current of the stream, as was contended for by appellant.

In the case of Holcomb v. Blair, 76 S. W. 843, 25 Ky. Law Rep. 974, it was held that the owner of lands abutting upon a navigable stream, which have been slowly and imperceptibly encroached upon by the stream, has no right to obstruct the channel by constructing a stone wall therein where the bank originally stood, resulting in injury to the property of others located further up the stream, the court in its opinion saying:

"The proof leaves no doubt that the dam obstructs the flow of water down the river, and backs it up on appellant's wheel. It also leaves no doubt

that the only justification claimed by appellee for putting the dam in the river is that the bank originally stood where the dam is placed, and has been washed away by the gradual pressing of the river over against it by the rocks, sand, and gravel washed down on the opposite side of the stream by Pert creek. * * * No rule is better settled than that, if a stream slowly and imperceptibly changes its course, the accretion on the gaining side belongs to the proprietor on that side, and the land gradually encroached upon by a navigable stream ceases to belong to the former owner as the channel of the stream shifts and covers it. Gould on Waters, sections 155-159. The rule is otherwise if the change is violent, and arising from a known sudden cause, like a freshet. Sweatman v. Holbrook, 38 S. W. 691, 39 S. W. 258 [18 Ky. Law Rep. 870]. But in the case before us the change has been so slow that there is great diversity in the testimony as to its extent, some witnesses saying that there has been no change at all, or but little. And while we are satisfied there has been some change, still it is of that gradual kind constantly occurring at such points on streams, and under which the thread of the stream in law follows the center of the channel as it changes. Hunter v. Witt, 50 S. W. 985 [21 Ky. Law Rep. 35]; Cruikshanks v. Wilmer, 93 Ky. 19, 18 S. W. 1018 [13 Ky. Law Rep. 888]. The appellee may build a stone wall along his bank to keep the water from washing under it, but he cannot encroach upon the channel of the stream, or place any obstruction in it.''

Also, in harmony with this rule, was it declared in the case of Sweatman v. Holbrook, 38 S. W. 691, 39 S. W. 258, 18 Ky. Law Rep. 870, that where, by reason of a freshet, the channel of a stream which forms a line between two estates suddenly changes its course and cuts off the property of one of them and adds it to the property of the other, the ownership is not changed.

In the instant case, the chancellor has found that such was not the character of change effected in the channel of the stream, but that it was one by accretion, extending the creek bank of the plaintiff by gradually adding to its alluvial deposits, slowly forming the sand bar.

In the later case of Witt v. Willis, 85 S. W. 223, 27 Ky. Law Rep. 417, was the same rule quoted with approval from Gould on Waters, section 159, that (page 224):

"If an unnavigable stream, in which the title of the riparian owners extends ad filum aquæ, slowly and imperceptibly changes its course, the boundary line is at the center of the new channel. But if the change is violent and visible, and arises from a known cause, such as a freshet, or a cut through which a new channel is formed, the original thread of the stream continues to mark the limits between the two estates."

See, also, Jean v. Brentlinger, 155 Ky. 509, 159 S. W. 1139; Pack v. Stepp, 110 S. W. 887, 33 Ky. Law Rep. 677; Hilleary v. Wilson, 100 S. W. 1190, 1192, 30 Ky. Law Rep. 1262.

In the latter case, the court, in its opinion delivered by Judge Carroll, said (page 1191):

"It is not seriously disputed that the law of accretions obtains in this state. Indeed, this has been settled by so many adjudications that it would not be useful to extend this opinion discussing this doctrine or the reasons upon which it rests. We will content ourselves with calling attention to the cases of: Berry v. Snyder, 3 Bush, 266, 96 Am. Dec. 219; Cruikshanks v. Wilmer, 93 Ky. 19, 18 S. W. 1018 [13 Ky. Law Rep. 888]; Kentucky Lumber Co. v. Green, 87 Ky. 257, 8 S. W. 439 [10 Ky. Law Rep. 139]; Miller v. Hepburn, 8 Bush, 326; Witt v. Willis, 85 S. W. 223, 27 Ky. Law Rep. 417; Holcomb v. Blair, 76 S. W. 843, 25 Ky. Law Rep. 974, 975—as well as to: City of St. Louis v. Rutz, 138 U. S. 226, 236, 11 S. Ct. 337, 34 L. Ed. 941; Jefferis v. East Omaha Land Co., 134 U. S. 178, 10 S. Ct. 518, 33 L. Ed. 872. And this rule extends to accretions made to islands, as well as to the mainland. American & English Ency. of Law, vol. 17, p. 536; Buse v. Russell, 86 Mo. 209; Cooley v. Golden, 117 Mo. 33, 23 S. W. 100, 21 L. R. A. 300."

While there is some conflict of authority as to the right of a riparian owner to restore to its former channel a stream which has formed a new channel, provided he does so within a reasonable time after the new chan-

nel is formed, it is clearly shown by the cases cited above that the rule of this jurisdiction is that where the channel of a stream has gradually and imperceptibly changed to a new channel, attended by the extension of one of the banks by accretions slowly deposited thereon, the owner of the opposite bank, complaining of loss of land resulting from such shifting of the channel, will not be permitted to place an obstruction or wall within the new creek bed for the purpose of restoring it to its old channel, but that his stream boundary changes with the changes in the thread of the new channel, as the same is caused by accretions to gradually shift.

The lower court's judgment being in harmony with our views as here and in these earlier cases expressed, or, that is to say, in conformity with the rule of this jurisdiction as repeatedly declared by us in earlier cases dealing with this question, it follows that the judgment should be and it is affirmed.