## Kentucky River Coal Corporation v. Maynard et ux.

(Decided Oct. 4, 1938.)

P. T. WHEELER for appellant.
NAPIER & NAPIER for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

Appellant owns a tract of land on the east side of First creek in Perry county. It claims that First creek forms the western boundary of its land. Appellees, J. M. Maynard and wife, own a tract of land on the west side of the creek but claim that their boundary extends beyond and includes a fraction of an acre on the east

side of the creek. A short time before the institution of this action appellees dug a ditch about 10 feet wide and 3 or 4 feet in depth along what they claim to be their line on the east side of the creek and constructed or started to construct a rock dam across the creek just below the mouth of the upper end of the ditch with a purpose to divert and change the flow of the creek from its regular channel into and along the course of the ditch.

Thereupon appellant instituted this action alleging that it was the owner and in possession of the tract of land described in the petition and adjoining the land of appellees and claimed that the creek is the boundary line between the two tracts. Something over 25 years ago a line of railroad running practically parallel with the creek was constructed on the west side thereof. Appellant alleged and set up the right to the use of a roadway leading from the county road along the creek across the lands in controversy and a railroad right of way and track to other portions of its property; that appellees had gone on its land and wrongfully cut the ditch, thus interfering with the travel and use of the road and was constructing or threatening to construct a dam across the creek to make it flow through the ditch. It asked that appellees be enjoined and restrained from erecting the dam or digging or maintaining the ditch over its land and across such roadway and from obstructing the roadway or diverting the creek from its natural flow.

By answer appellees made a general denial of the allegations of the petition and in a second paragraph affirmatively alleged their ownership and possession of a tract of land described in the answer and alleged that appellant was setting up an illegal and spurious claim to such boundary and certain portions thereof and caused a temporary injunction to be issued in the Perry circuit court enjoining and restraining appellees from the occupation and use of such land and giving out that it was the owner of the tract described in the answer and entitled to possession thereof. They prayed that the temporary injunction against them be dissolved and their title quieted.

By reply appellant denied the material allegations of the answer and denied that appellees' deed embraced any of the boundary of land claimed by plaintiff lying beyond the center of First creek and between it and the

railroad's right of way. The record is confusing as to the direction in which the creek runs and on which side of it the lands claimed by appellant lie, but from a plat filed in the record it appears that it is on the west side of the creek, but be that as it may, appellant's land is on one side of the creek and the main portion if not all of appellees' land is on the other side.

On final hearing the chancellor denied the relief sought by appellant, dissolved the temporary injunction and dismissed the petition. This appeal followed.

It will be unnecessary to go into a discussion of the chain of title of the respective parties. It is sufficient to say that many years ago Elhannon S. Combs owned the land on both sides of the creek in this particular locality. He conveyed the land on what we refer to as the west side of the creek to John Stacey and wife, remote grantors of appellant, and the opposite side to remote grantors of appellees, the creek being the dividing line between the respective properties thus conveyed. All deeds call to run with the meandering of the creek. Appellees acquired their land in 1934. The third call in their deed calls to run to a rock in the center of First creek and then with the meanderings of the creek a number of courses and distances to where the boundary leaves the creek to run to the point of beginning. A surveyor who testified for appellees and who made a plat found in the record testified that the boundary as given in appellees' deed would include the ditch dug by appellees and the land in controversy. The ditch is only 30 or 40 feet from the present channel of the creek at its widest point and according to the evidence there is less than one-eighth of an acre in the land between the creek and the ditch. It is recited in the judgment that appellees' title embraces the ditch and all the land in controversy and the court found that the course of the creek was changed immediately after the construction of the railroad and thrown over toward appellees' land; that the creek ran where appellees were digging the ditch; that the change in the course of the creek was not such a gradual change as to permit the line of appellant's land to follow the course of the stream; that the railroad was constructed more than fifteen years before the institution of the action but the evidence did not show such character of possession by appellant as to give title to this particular strip of land by prescription

or show such continued and uninterrupted use of the passway as to give it the right to a passway over appellees' land.

Some witnesses for appellees testified that many years ago the creek ran practically with the course of the ditch.

A greater number of witnesses who have lived in the community for many years and were acquainted with the land and the course of the creek and were equally if not better qualified to speak concerning the matter testified that the channel of the creek was the same as it had been since they had known it. There is some evidence to the effect that the making of the fill for the construction of the railroad changed the course of the creek, but we have searched the record carefully to find basis for a conclusion that the change in its course, if any, was sudden. If there had been such change some or all of the witnesses who testified for the respective parties who had known the creek from 25 to 40 years or more would have known of it, but not one of them testified to such change in the course of the stream and there is evidence concerning the nature of the earth where the ditch was dug and to other physical facts to indicate that if the course of the creek has in fact changed, it has been by gradual washing or erosion on the one side and gradual accretion on the other.

It is a firmly established rule in this as in many other jurisdictions that where the boundary given in a deed calls to run with the meanderings of a stream the courses and distances, if there be a conflict, must yield. Hunter v. Witt, 50 S. W. 985, 21 Ky. Law Rep. 35; Vaughn v. Foster, 47 S. W. 333, 20 Ky. Law Rep. 682; Stonestreet et al. v. Jacobs, 118 Ky. 745, 82 S. W. 363, 26 Ky. Law Rep. 628, rehearing denied 118 Ky. 745, 82 S. W. 1012, 26 Ky. Law Rep. 1015. See, also, City of Hazard v. Eversole, 237 Ky. 242, 35 S. W. (2d) 313; City of Covington v. State Tax Commission, 231 Ky. 606, 21 S. W. (2d) 1010.

Concerning changes in the course of a stream forming the boundary between lands the rule quoted from 5 Cyc. 904 is thus stated in Spurrier et al. v. Hodges et al., 90 S. W. 559, 560, 28 Ky. Law Rep. 804:

"Where, by a sudden and violent or artificial change, the channel or shore upon which riparian

or littoral lands are bounded is shifted, the boundaries of such lands are unaffected, and remain in their original position; but where the change is gradual and imperceptible, whether caused by accretion, reliction, or encroachment, the boundaries shift with the shifting of the channel or shore."

To the same effect see the recent case of Johnson v. Lainhart, 274 Ky. 127, 118 S. W. (2d) 204, and authorities therein cited. In the Spurrier opinion it is further said:

"We do not think it material to inquire whether or not the channel or thread of the stream had changed since 1839, when the conveyances to Carroll and Anderson were made. To show this, if it were material, would rest upon appellant; but it is not material. If, during the long period of time which has intervened since then, the thread of the stream has gradually changed, the boundary of the respective tracts of land would shift with this gradual change."

If there has been such change as claimed by appellees in the course of First creek, the burden of establishing such change would, as clearly indicted in Spurrier v. Hodges, supra, be upon appellees and as will appear from our recital of the substance of the evidence they have signally failed to meet that burden. We are constrained to hold that the thread of the stream as it now runs is the boundary line between the land of the opposing parties and that the chancellor erred in adjudging otherwise and in not granting to appellant the relief sought.

Wherefore, the judgment is reversed with direction to set it aside and enter judgment in conformity with this opinion.